```
          IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```

|                                    |   |                  |
|------------------------------------|---|------------------|
| LAWRENCE D. JOHNSON, as            ) |   |                  |
| trustee of The SJ Trust,           ) |   |                  |
| and WILLIAM P. JOHNSON,            ) |   |                  |
| as trustee of The DJ Trust,        ) |   |                  |
|                                    ) |   |                  |
|     Plaintiffs,                    ) |   |                  |
|                                    ) |   |                  |
| v.                                 ) | No. 2:19-cv-02217 |
|                                    ) |   |                  |
| ARCH SPECIALTY INSURANCE           ) |   |                  |
| CO.,                               ) |   |                  |
|                                    ) |   |                  |
|     Defendant.                     ) |   |                  |

**ORDER**

Before the Court is Defendant Arch Specialty Insurance Company's ("Arch") October 28, 2019 Motion to Dismiss. (ECF No. 38.) Plaintiffs Lawrence D. Johnson, as trustee of The SJ Trust, and William P. Johnson, as trustee of The DJ Trust, responded on November 25, 2019. (ECF No. 41.) Arch replied on December 9, 2019. (ECF No. 42.)

For the following reasons, the Motion to Dismiss is DENIED.

**I.   Background**

For purposes of the Motion to Dismiss, the facts are taken from the Amended Complaint.

Plaintiffs own two commercial buildings in Memphis, Tennessee, that they rent to retail tenants (the "Properties"). (See ECF No. 37 ¶¶ 3, 11.) In January 2017, Plaintiffs insured the Properties under a commercial liability policy issued by Arch (the "Policy"). (Id. ¶¶ 7-8; see also Policy, ECF No. 37-2.) The Policy covers direct physical losses or damages to the Properties. (ECF No. 37 ¶ 15.) The Policy is an "all risk" policy, which means that it covers all direct physical losses or damages to the Properties unless the losses or damages are specifically excluded or limited by the Policy. (Id. ¶ 16.)

In January 2018, while the Policy was in effect, a winter storm caused substantial exterior and interior damage to the Properties. (Id. ¶ 19.) Before the storm, the roofs of the Properties had no defects and were well-maintained. (Id. ¶ 20.) On February 16, 2018, Plaintiffs reported the damage to the Properties to Arch. (Id. ¶ 22.) In May 2018, Arch hired a structural engineer from Rimkus Consulting to inspect the Properties. (Id. ¶ 26.) On July 17, 2018, Arch gave Plaintiffs a copy of the structural engineer's report (the "Rimkus Report"). (Id. ¶ 27.) The Rimkus Report concluded, inter alia, that "issues associated with the roof membrane [of the Properties] were characterized by roof leaks through deteriorated openings," that "the roof membranes of the buildings were not damaged by the weight of ice and snow," and

2

that the "accumulation of freezing precipitation that later thawed contributed to the leakage into the facility through previous deteriorated roof areas . . . ." (Id. ¶ 28.)

On July 17, 2018, Arch informed Plaintiffs that it had "not made an official written coverage decision yet, but it appears the loss would be limited by the [P]olicy, based on the Rimkus [R]eport, as water did not enter the buildings through openings on the roof from a covered cause of loss." (Id. ¶ 30.) On November 16, 2018, Arch denied Plaintiffs' claim. (Id. ¶ 38.)

On April 8, 2019, Plaintiffs filed a Complaint against Arch in this Court asserting claims for breach of contract and reformation and seeking compensatory and punitive damages. (See ECF No. 1 ¶¶ 43-53.) On October 8, 2019, Plaintiffs filed the Amended Complaint, which added a statutory bad-faith claim under Tenn. Code Ann. § 56-7-105. (See ECF No. 37 ¶¶ 54-59.)

On October 28, 2019, Arch filed the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiffs had failed to state a claim upon which relief can be granted. (ECF No. 38.)

## II. Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff Lawrence D. Johnson, as trustee of The SJ Trust, is a resident citizen of Mississippi. (ECF No. 37 ¶ 1.)

3

Plaintiff William P. Johnson, as trustee of The DJ Trust, is a resident citizen of Mississippi. (Id. ¶ 2.) "[W]hen a trustee files a lawsuit in her name, her jurisdictional citizenship is the State to which she belongs -- as is true of any natural person." Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016 (2016) (emphasis omitted) (citing Navarro Savings Ass'n v. Lee, 446 U.S. 458, 465 (1980)). Arch is a Missouri corporation with its principal place of business in Kansas City, Missouri. (ECF No. 37 ¶ 4.) The parties are completely diverse.

The amount-in-controversy requirement is satisfied. Plaintiffs allege that the amount in controversy exceeds $75,000. (Id. ¶ 6.) "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).

State substantive law applies to state law claims in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume that Tennessee substantive law governs Plaintiffs' claims.

4

(See ECF No. 39 at 9-14; ECF No. 41 at 4-15.) The Court applies Tennessee substantive law to Plaintiffs' claims.

**III. Standard of Review**

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

5

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009). "If the district court does consider evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment." Id. (quotation marks and citation omitted). The Sixth Circuit generally takes "a liberal view of what matters fall within the pleadings for purposes of" a motion to dismiss. Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001). Documents attached to a motion to dismiss may be considered part of the pleadings if they are "referred to in a complaint and central to the claim." Id. (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)); see also Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public

6

records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

IV. **Analysis**

Arch moves to dismiss Plaintiffs' breach of contract claim, Plaintiffs' statutory bad-faith claim, and Plaintiffs' request for punitive damages. (ECF No. 38.)

In general, the arguments Arch asserts in the Motion to Dismiss are better suited to summary judgment. Arch relies on matters outside the pleadings or otherwise addresses the factual allegations of the Amended Complaint. At this stage, the Court relies only on the pleadings and accepts the Amended Complaint's factual allegations as true. See Armengau, 7 F. App'x at 343-44 (citing Sims v. Mercy Hosp. of Monroe, 451 F.2d 171, 173 (6th Cir. 1971)). Absent heightened pleading standards, which are not asserted here, the Court decides only whether the Amended Complaint pleads "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

A. **The Rimkus Report**

Arch's Motion to Dismiss relies heavily on the Rimkus Report, a structural engineering report on the Properties that Arch commissioned during its investigation of Plaintiffs'

7

insurance claim. (See ECF No. 39 at 6-8, 9-13.) The Rimkus Report concludes, inter alia, that the Properties had "deficient roof conditions" that "pre-dated the January 2018[] weather events" and that "[t]he roof membranes of the buildings were not damaged by the weight of ice and snow" from the January 2018 winter storm. (Id. at 7; ECF No. 39-3 at 2 ¶¶ 4, 6.) Arch has attached a copy of the Rimkus Report to its Motion to Dismiss. (See ECF No. 39-3.)

Arch argues that "[t]his Court may consider the full text of documents, such as the Rimkus Report, quoted in and relied upon by Plaintiffs in their Amended Complaint." (ECF No. 39 at 7 n.1.) Plaintiffs respond that the Court should not consider the Rimkus Report in evaluating the Motion to Dismiss because, although the Amended Complaint briefly references it, "the Rimkus Report is not central to Plaintiffs' claim." (ECF No. 41 at 15-17.)

Documents attached to a motion to dismiss may be considered part of the pleadings if they are "referred to in a complaint and central to the claim." Armengau, 7 F. App'x at 344. Although central to Arch's defenses, the Rimkus Report is not central to Plaintiffs' claims. Plaintiffs did not attach the Rimkus Report to the Amended Complaint. The Amended Complaint describes the report and quotes several of its findings. (ECF No. 37 ¶¶ 27-28.) The Amended Complaint

8

asserts that the quoted findings, "even if true, result in full coverage for the entirety of [Plaintiffs' loss]." (Id. ¶ 29.) Plaintiffs argue that "[t]he Rimkus Report is merely mentioned in the Amended Complaint to lay out the facts of Plaintiffs' case with regard to Arch's defense to demonstrate that Plaintiffs' claim is compensable even if the conclusions reached in the Rimkus Report were accurate." (ECF No. 41 at 16.) Plaintiffs assert that they will rely on their own expert proof at trial. (Id.) Plaintiffs' arguments are well-taken. The Rimkus Report is mentioned in the Amended Complaint only briefly. Many of its findings are adverse to Plaintiffs' factual allegations. Plaintiffs nowhere rely on it as central to their claims. The Rimkus Report is not part of Plaintiffs' pleadings. The Court will not consider it in evaluating the Motion to Dismiss.

### B. Breach of Contract

Arch asserts that Plaintiffs fail to state a breach of contract claim for which relief can be granted "because lack of proper maintenance caused the alleged damage to the premises and Arch fully performed its obligations under the [Policy]." (ECF No. 39 at 9-11.) Relying on the Rimkus Report, Arch argues that the losses to the Properties resulted from deteriorated roofing and not from the January 2018 winter

9

storm. (Id.) Arch argues that the losses are excluded from coverage under the Policy. (Id.)

Arch's arguments are unpersuasive. Plaintiffs plead "sufficient factual matter, accepted as true, to state" a plausible breach of contract claim. Iqbal, 556 U.S. at 678. In Tennessee, the elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) a deficiency in performance amounting to a breach; and (3) damages caused by the breach. Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011) (citing ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

Plaintiffs plead the existence of a valid and enforceable contract, the Policy, which they attach to the Amended Complaint. (ECF No. 37 ¶¶ 7-9, 44; ECF No. 37-2.)

Plaintiffs plead numerous facts to support their theory of breach. They allege that the Policy is an "all risk" policy, that the losses to the Properties in January 2018 resulted from the winter storm, that the roofs of the Properties were well-maintained prior to the storm, that they promptly reported the losses to Arch, and that Arch refused to pay any portion of their insurance claim. (ECF No. 37 ¶¶ 16, 19-20, 22, 38, 45.)

Plaintiffs plead that they have sustained damages as a result of Arch's alleged breach, "including but not limited to the replacement cost of the damage to the [Properties] and

temporary repairs, as well as consequential damages, plus interest thereon." (Id. ¶¶ 42, 46.) Plaintiffs plead a cognizable breach of contract claim.

**C. Statutory Bad Faith**

Arch asserts that Plaintiffs fail to state a statutory bad-faith claim for which relief can be granted because "no coverage exists [under the Policy] and Arch acted in good faith when it denied coverage of Plaintiffs' claimed loss." (ECF No. 39 at 11-13.) Relying on the Rimkus Report, Arch reiterates its argument that the losses to the Properties resulted from deteriorated roofing and are excluded from coverage under the Policy. (Id.) Arch argues that it "acted reasonably in investigating [Plaintiffs' insurance] claim and subsequently denying coverage." (Id.)

Arch's arguments are unpersuasive. Plaintiffs plead "sufficient factual matter, accepted as true, to state" a plausible statutory bad-faith claim. Iqbal, 556 U.S. at 678. In Tennessee, the elements of a statutory bad-faith claim are: (1) the policy of insurance, by its terms, has become due and payable; (2) a formal demand for payment has been made; (3) the insured party has waited 60 days after making a demand before filing suit; and (4) the refusal to pay was not in good faith. Minton v. Tenn. Farmers Mut. Ins. Co., 832 S.W.2d 35, 38 (Tenn. Ct. App. 1992) (referencing Tenn. Code Ann. § 56-7-105). "[A]n

11

insurer's refusal to pay is in good faith . . . if the refusal to pay 'rests on legitimate and substantial legal grounds.'" Kizer v. Progressive Cas. Ins. Co., No. 3:06-cv-1109, 2008 WL 2048274, at *5 (M.D. Tenn. May 12, 2008) (quoting Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 378 (6th Cir. 2007)). An insurer's refusal to pay is not in good faith if "the ultimate purpose of the insurance company was . . . to minimize its own liability at the expense and inconvenience of the insured." Mann v. Grange Mut. Ins. Co., No. 86-155-II, 1986 WL 14223, at *3 (Tenn. Ct. App. Dec. 17, 1986).

Plaintiffs plead that the Policy, by its terms, became due and payable after the Properties were damaged by the January 2018 winter storm and that Plaintiffs filed an insurance claim with Arch. (ECF No. 37 ¶¶ 22-23.)

Plaintiffs plead that they made a formal demand for payment of their insurance claim. (Id. ¶ 55.)

Plaintiffs plead that more than 60 days passed after their formal demand before they filed their statutory bad-faith claim. (Id.)

Plaintiffs plead that Arch refused their insurance claim in bad faith. They allege, inter alia, that the losses to the Properties are clearly compensable under the Policy, that "[t]here is no reasonable coverage dispute or other justifiable reason for [Arch's] refusal," that Arch "refus[ed] to pay

12

Plaintiffs' claim without conducting a reasonable investigation based on all available information," and that Arch failed to "promptly provide Plaintiffs with a reasonable and accurate explanation for its refusal to pay their claim in full." (Id. ¶¶ 23, 39, 58.) Plaintiffs plead a cognizable statutory bad-faith claim.

### D. Punitive Damages

Arch asserts that Plaintiffs fail to state a basis for punitive damages for which relief can be granted because "Plaintiffs' Amended Complaint lacks any factual pleading that would support a finding that Arch acted intentionally, fraudulently, maliciously, or recklessly" in refusing to pay Plaintiffs' insurance claim. (ECF No. 39 at 14-15.) Arch argues that it "had a reasonabl[e] basis for denying coverage" and that "Plaintiffs[] have not demonstrated in their pleadings how any alleged actions on behalf of Arch can be considered [sufficiently] egregious as to warrant the imposition of punitive damages." (Id. (quotation marks and citation omitted).)

Arch's arguments are unpersuasive. Plaintiffs plead "sufficient factual matter, accepted as true, to state" a plausible basis for punitive damages. Iqbal, 556 U.S. at 678. In Tennessee, punitive damages in a breach of contract case are "limited to 'the most egregious cases' and [are] proper only

where there is clear and convincing proof that the defendant has acted either 'intentionally, fraudulently, maliciously, or recklessly.'" Rogers v. Louisville Land Co., 367 S.W.3d 196, 211 n.14 (Tenn. 2012) (quoting Goff v. Elmo Greer & Sons Constr. Co., 297 S.W.3d 175, 187 (Tenn. 2009)).

Plaintiffs plead facts indicating that Arch acted either recklessly or intentionally in denying Plaintiffs' insurance claim. As discussed supra, Plaintiffs sufficiently plead that Arch breached the Policy. They allege that Arch "refused and failed to conduct a reasonable investigation of Plaintiffs' claim based on all available information," "unjustly refused to pay Plaintiffs' claim for its own financial preservation with no reasonable or justifiable basis," and "delayed the handling of the claim for no justifiable reason." (ECF No. 37 ¶ 50.) Plaintiffs plead a cognizable basis for punitive damages.

## V. Conclusion

For the foregoing reasons, the Motion to Dismiss is DENIED.


So ordered this 13th day of April, 2020.

                             /s/ *Samuel H. Mays, Jr.*
                             Samuel H. Mays, Jr.
                             UNITED STATES DISTRICT JUDGE